## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ASHLEY BITSILLY, by and through her mother
and sole guardian, TRACEY DENET-YAZZIE;
SCHECASULYN TSOSIE, by and through her
mother and sole guardian, LINDA ETSITTY;
LARRY BARNELL, by and through his mother
and sole guardian, LORETTA YAZZIE;
GABRIELLA YAZZIE, by and through her sole
guardian, AIDA YAZZIE; LYLE BEN, by and
through his parents and guardians, HERMAN and
LOUISE BEN,

        Plaintiffs,

vs.                             No. Civ. 99-1390  LH/RLP

BUREAU OF INDIAN AFFAIRS;
JAMES H. MCDIVITT, in his official capacity as
(Acting) Assistant Secretary of the Bureau of Indian Affairs;
UNITED STATES DEPARTMENT OF THE
INTERIOR; GALE NORTON, in her official
capacity as Secretary of the United States
Department of the Interior,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendants' Motion to Dismiss, filed September

25, 2000 [Doc. No. 43]; Defendants' Suggestion of Lack of Subject Matter Jurisdiction, filed

October 12, 2000 [Doc. No. 52]; Plaintiffs' Motion to Strike Defendants' Reply in Support of

Suggestion of Lack of Subject Matter Jurisdiction and Response to Plaintiffs' Surreply in

Opposition to Defendants' Motion to Dismiss, filed November 29, 2000 [Doc. No. 57]; and

Defendants' Conditional Motion and Brief for Leave to File a Response to Plaintiffs' Surreply,

filed December 14, 2000 [Doc. No. 59].  The Court, having read the motions, memoranda, and pleadings or other paper submitted by the parties, and being apprised of the applicable law, concludes that Defendants' substantive motions are partially well taken.  All other motions will be denied.

## I.      BACKGROUND

### A.  Introduction

This is a putative class action arising from Defendants' alleged procedural and substantive violations of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400-1487; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; the Administrative Procedures Act (APA), 5 U.S.C. § 553; and the Due Process Clause of the Fifth Amendment of the United States Constitution.  Defendant Department of the Interior (DOI) is the parent agency of Defendant Bureau of Indian Affairs (BIA).  Both the DOI and the BIA allegedly are responsible for meeting the requirements of the IDEA and the educational needs of disabled Native American children who reside on reservations and attend elementary and secondary schools funded by Defendant Secretary of the DOI (Secretary of the Interior or Interior Secretary).  Defendant Assistant Secretary of the BIA oversees the operations of Defendant BIA.  The five named Plaintiffs, and the class they seek to represent, are allegedly Native American children with disabilities, as defined by the IDEA, who attend or have attended schools funded and/or operated by the DOI through the BIA.  While all the schools at issue in this case are or have been funded to some degree by Defendants, including with IDEA grants, two of the Plaintiffs attend or attended schools which are not directly administered or operated by the BIA, but are tribally controlled, as that term is used by the Tribally Controlled Schools Act, 25 U.S.C. §§ 2501-2511.  All five

Plaintiffs allegedly reside on the Navajo Nation.

Plaintiffs' allegations involve the provision of education (the substantive claims), the provision of procedural safeguards (the procedural or due process claims), and the BIA's promulgation of Interim Regulations without notice and comment (the APA claims).  In addition to the alleged statutory and constitutional issues raised by Plaintiffs, this case also raises difficult questions regarding the proper balance between the federal government's trustee obligations to Native Americans and its obligation to promote tribal self-governance and self-determination. Plaintiffs seek declaratory, injunctive, and compensatory relief.  Plaintiffs also request that the Court retain jurisdiction over Defendants and appoint a special master to monitor Defendants until they are fully in compliance with their duties at issue in this action.

In their first motion to dismiss, Defendants contend that Plaintiffs' complaint must be dismissed for lack of subject matter jurisdiction (lack of standing), failure to exhaust administrative remedies, and failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Exhibits are attached to Defendants' supporting memorandum and reply and to Plaintiffs' response.  In their second motion to dismiss, or suggestion of lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3), Defendants allege that Counts III (Violation of APA) and IV (Violation of Due Process) of Plaintiffs' complaint must be dismissed for lack of subject matter jurisdiction (mootness) because of events that arose after the briefing of their first motion to dismiss, specifically the BIA's implementation on September 1, 2000, of final rules or regulations, after notice and comment.  Defendants' supporting brief is consolidated with their reply to their first motion to dismiss (Defendants' "consolidated" reply), including the attached

exhibits.[1]   Plaintiffs attached exhibits to their reply.  Discovery has been stayed pending the

resolution of Defendants' first motion to dismiss.

## B.  The IDEA

Plaintiffs' claims fall under Part B of the IDEA, 20 U.S.C. §§ 1400-1487, and related

federal regulations (as well as Section 504 of the Rehabilitation Act of 1973 and the Due Process

Clause).[2]  Congress enacted the IDEA to "meet its responsibility to provide an equal educational

opportunity for all individuals." 20 U.S.C. § 1400(c)(7)(A).  Under the IDEA, children with

disabilities are guaranteed access to "a free appropriate public education that emphasizes special

education and related services designed to meet their unique needs . . . ." Id. § 1400(d)(1)(A);

see id. § 1401(8).  The IDEA provides federal money through grants "to assist States, localities,

educational service agencies, and Federal agencies to provide for the education of [and provision

of related services to] all children with disabilities."  Id. § 1400(d)(1)(C).  To receive IDEA

---

[1] In response to Plaintiffs' motion for leave to file a surreply, in which Plaintiffs objected to Defendants' filing of 61 exhibits with their "consolidated" reply as a violation of the Court's 50-page limit, Defendants withdrew "the second, third, fifth, and eighth pages of Attachment 3 to Appendix B; the second page from Appendix C; and the last six pages of Appendix D."  Defs.' Resp. to Pls.' Mot. for Leave to File Surreply and Notice of Withdrawal of Exs., filed Oct. 12, 2000, at 3.  As there are no attachments to Exhibit/Appendix B, but four attachments to Appendix/Exhibit A, the Court will presume that Defendants' first withdrawal applies to Exhibit/Appendix A and not to Exhibit/Appendix B.  The Court notes that if Defendants had followed proper motion procedure and filed separate briefs for their two motions, they would have been able to attach 50 pages of exhibits to each brief and would not have had to withdraw supporting material.

[2] The IDEA was overhauled in 1997 with the IDEA Amendments of 1997, Pub. L. 105-17, 111 Stat. 37 (June 4, 1997).  The Amendments expanded the IDEA's substantive and procedural requirements and renumbered provisions.  Final rules implementing the 1997 IDEA Amendments were promulgated by the Secretary of Education in March 1999.  64 Fed. Reg. 12,406 (Mar. 12, 1999); 34 C.F.R. pt. 300.  At least one provision of the IDEA, not relevant here, also was amended in 1999.  Pub. L. 106-25, § 6, 113 Stat. 41, 49 (Apr. 29, 1999).  For purposes of this case, the IDEA and applicable federal regulations have provided substantially the same protections and educational rights at all times relevant to Plaintiffs' complaint.  Therefore, for simplicity's sake, this opinion will cite the 2000 version of the IDEA and the Code of Federal Regulations, unless otherwise noted.

funding, states must be in compliance with the IDEA and have in effect certain polices and procedures approved by the Secretary of Education.  Id. § 1412(a); 34 C.F.R. §§ 300.110, 300.121-300.156.  Local educational agencies must be in compliance with the approved state policies.  20 U.S.C. § 1413(a)(1).  To implement the goals of the IDEA, each disabled child must be evaluated and must have an individualized education program (IEP).  Id. §§ 1401(11), 1412(a)(4), 1414(a), (d); 34 C.F.R. §§ 300.300, 300.341.  Disabled children must be educated in the "least restrictive environment" in which they can receive an appropriate education.  20 U.S.C. §§ 1412(a)(5), 1413(a)(1); 34 C.F.R. §§ 300.550, 300.556.  States must have a comprehensive system or plan of personnel development and accompanying standards "to ensure an adequate supply of qualified special education, regular education, and related services personnel."  Id. § 1412(a)(14), (15); 34 C.F.R. §§ 300.135, 300.136, 300.380-300.382.  The IDEA places special emphasis on parental involvement in the IEP process.[3]  20 U.S.C. §§ 1400(a)(5)(B), (d)(1)(B), 1415(b); 34 C.F.R. §§ 300.345, 300.501.

Additionally, parents must be afforded procedural safeguards, including notice regarding the availability of these safeguards and the procedures to be followed.[4]  Id. § 1415; 34 C.F.R. §§ 300.500 (States "shall ensure that each public agency establishes, maintains, and implements procedural safeguards that meet the requirements of §§ 300.500-300.529."), 300.503-300.504.  The procedural safeguards include due process administrative hearings and judicial review in state

---

[3] Under the IDEA, 20 U.S.C. § 1401(19), and in this opinion, the term "parent" includes legal guardians.

[4] Notice of the available procedural safeguards must be provided to a parent "at a minimum" upon the child's "initial referral for evaluation," "upon each notification of an IEP meeting," "upon reevaluation of the child," and "upon registration of a complaint under subsection (b)(6) of this section." 20 U.S.C. § 1415 (d)(1).

or federal district court.  20 U.S.C. § 1415; 34 C.F.R. §§ 300.507-300.512.  An opportunity for a due process hearing must be given whenever a complaint is received from a parent regarding the education of her child.  20 U.S.C. § 1415(f)(1).  A decision must be rendered within 45 days of receipt of the hearing request.  34 C.F.R. § 300.511(a)(1).  The deadline, however, may be extended at the request of either party.  Id. § 300.511(c).  Exhaustion of the administrative hearing process generally is required before a judicial claim challenging the appropriateness of a disabled child's education can be brought under the IDEA, 20 U.S.C. § 1415(i)(2); 34 C.F.R. § 300.512, or other laws, such as the Rehabilitation Act of 1973, or the Constitution, 20 U.S.C. § 1415(l); 34 C.F.R. § 300.512(d).  In addition to the administrative hearing and judicial review processes available, an individual or organization may make a written complaint to a state regarding claims that a public agency is violating the IDEA.  34 C.F.R. §§ 300.660-300.662. Notice of a state's complaint procedures must be "widely disseminat[ed] to parents" and other interested parties.  Id. § 300.660(a)(2).  Making a state complaint (previously known as EDGAR procedures), without requesting a due process hearing, however, is not an alternative to exhaustion of the IDEA's administrative remedies.  Association of Cmty. Living v. Romer, 992 F.2d 1040, 1045 (10th Cir. 1993).

Although the IDEA focuses on states and localities, the DOI also is eligible to receive IDEA grants from the Secretary of the Department of Education to fund special education and related services for Indian children in elementary and secondary schools operated and/or funded by Defendants, including tribally controlled schools.  20 U.S.C. § 1411(a)(1), (c), (i)(1)(A); 25 U.S.C. §§ 2503, 2505; 34 C.F.R. § 300.715(b), (d).  To receive IDEA funding, the Secretary of the Interior must comply with many of the same IDEA provisions and implementing regulations

applicable to states and local educational agencies described above, including those regarding the provision of a free appropriate public education in the least restrictive environment, IEPs, parental involvement, adequate supplies of qualified personnel, comprehensive systems of personnel development, due process hearings, judicial review, written complaint procedures, and notice.  20 U.S.C. §§ 1411(i)(2), 1412; 34 C.F.R. §§ 300.260 (assurances Interior Secretary must make and enumerating IDEA provisions with which Interior Secretary must comply), 300.267 (enumerating C.F.R. sections with which Interior Secretary must comply), 300.715(d).  In addition to ensuring IDEA compliance and monitoring and evaluating those entities to which she awards IDEA funds, 20 U.S.C. §§ 1411(i)(2), (4), (5), 1412(a); 34 C.F.R. §§ 300.260, 300.267, the Interior Secretary must develop and implement a plan for the coordination of services to all disabled Native American children residing on reservations, including coordinating with tribes, 20 U.S.C. § 1411(i)(2)(b), (4); 34 C.F.R. §§ 300.260(e), 300.263.  In setting out the responsibilities of Defendants, the IDEA makes no distinction between schools directly administered by Defendants, such as BIA operated schools, and schools which the DOI funds, such as tribally controlled schools.

From 1985 to April 1997, Defendants' substantive and procedural requirements implementing the IDEA were set forth in formal regulations.  25 C.F.R. pt. 45 (1996).  These regulations replicated in large part the formal regulations promulgated by the Secretary of Education for implementing the IDEA.  Compare, e.g., 25 C.F.R. §§ 45.51-45.63 (1996) with 34 C.F.R. §§ 300.500-300.585 (1996).  Defendants' procedural regulations differed from the Department of Education regulations in requiring mediation attempts, 25 C.F.R. § 45.57 (1996), and in assigning responsibility to specific agency officials, id. §§ 45.58, 45.59, 45.63(b).

Effective April 11, 1997, after public notice and comment, the BIA repealed Defendants'
separate regulations "to streamline the regulatory process and enhance the planning and
coordination of new and existing regulations."  62 Fed. Reg. 11,324, 11,324 (Mar. 12, 1997).
The BIA further explained that 25 C.F.R. Part 45 was "no longer necessary, as it is repetitive of
34 C.F.R. Chapter III, Parts 300-399, and the [BIA] has an agreement with the Department of
Education to use those regulations."  Id.; 61 Fed. Reg. 34,399, 34,399 (July 2, 1996) (stating
information contained in 25 C.F.R. Part 45 is already included in 34 C.F.R. Chapter III, Parts
300-399).  Tribes were notified of the proposed change and there were no objections to the
elimination of 25 C.F.R. Part 45.  62 Fed. Reg. at 11,324.

Shortly thereafter, Congress reauthorized, renumbered, and expanded the IDEA with the
IDEA Amendments of 1997.  Pub. L. 105-17, 111 Stat. 37 (June 4, 1997).  The Amendments
included elaboration of the already-existing due process requirements in Part B of the IDEA.
Compare 20 U.S.C. § 1415 (2000) with 20 U.S.C. § 1415 (1994).  The majority of the
amendments to Parts A and B of the IDEA, including those relating to procedural safeguards,
became effective June 4, 1997.  Pub. L. 105-17, § 201(a)(1), 111 Stat. at 156; see id. § 201, 111
Stat. at 156 (effective dates for various Amendments).  Amendments to already-existing
provisions regarding IEPs, comprehensive systems of personnel development, performance goals,
and data to be provided to the Secretary of Education by states and the Interior Secretary became
effective July 1, 1998.  Id. § 201(b)(2)(A), 111 Stat. at 156.  While the Secretary of Education
published proposed rules implementing the 1997 IDEA Amendments in October 1997, 62 Fed.
Reg. 55,026 (Oct. 22, 1997), final rules were not promulgated until March 1999, 64 Fed. Reg.
12,406 (Mar. 12, 1999); 34 C.F.R. pt. 300.  These final rules, at least in part, apply to the DOI.

See, e.g., 34 C.F.R. §§ 300.260, 300.267, 300.715.  The Secretary of Education gave states and Defendants until the submission of their funding applications for the 2000-2001 school year to provide "[f]inal policies, procedures or regulations" implementing the 1997 IDEA Amendments and applicable federal regulations.  Defs.' First Mot. Dismiss, Ex. A. at 2 (Hehir letter).

On September 19, 1997, shortly after the issuance of the 1997 IDEA Amendments and the effective date of some of the provisions, in a three-page memorandum regarding due process procedures, the BIA's Director of the Office of Indian Education Programs (OIEP) reminded BIA Education Line Officers that although 25 C.F.R. Part 45 had been rescinded by the DOI, due process requirements had not significantly changed and were covered by 34 C.F.R. Part 300.  Id. Ex. B. at 1 (Interim Guidelines).  The OIEP Director advised further that to ensure compliance with the 1997 IDEA Amendments, modifications to the due process procedures were being developed.  Id.  Until such modifications were complete, the Education Line Officers were directed to follow the procedures contained in the memorandum and, for further explanation, to review the Understanding Due Process Proceedings for Students with Disabilities handbook sent to Education Line Officers and BIA funded schools in the fall of 1996.  Id. at 1, 3.  Although the memorandum was not addressed to tribally controlled schools, the OIEP Director stated tribally controlled schools "may also utilize and/or modify these procedures or, at their discretion, establish their own Due Process procedures which meet the requirements found in" the 1997 IDEA Amendments.  Id. at 1.  The procedures outlined in these "Interim Guidelines" specified the officials responsible for different duties, delineated notice requirements, and, in compliance with the 1997 IDEA Amendments, specified mediation procedures.

On September 1, 2000, after notice and comment in accordance with 20 U.S.C.

§ 1411(i)(2)(C), Defendants' required new policies and procedures were implemented. Defs.' Consolidated Reply at 3-6. These policies are set forth in the BIA's 158-page <u>Special Education Eligibility Document</u> (July 2000) (<u>Eligibility Document</u>) and implement the 1997 IDEA Amendments. <u>Id.</u> Ex. A., Attach. 3 (partial copy of <u>Eligibility Document</u>). The <u>Eligibility Document</u> supersedes the Interim Guidelines. Although the Department of Education has not completed its final review of the <u>Eligibility Document</u>, the BIA has been allowed to implement the <u>Eligibility Document</u> during the current school year. Among other topics, the <u>Eligibility Document</u> contains provisions on parental notice of rights, due process proceedings, and complaint procedures, as well as technical assistance information for school personnel.

The <u>Eligibility Document</u>'s intended scope of applicability is unclear. There is evidence the <u>Eligibility Document</u> was intended to apply to all BIA funded schools,[5] including tribally controlled schools receiving IDEA funding, as well as contrary evidence that it was intended to apply only to BIA operated schools. The BIA sent the <u>Eligibility Document</u> "to all Education Line Officers . . ., all special education coordinators, and all principals at BIA funded schools." <u>Id.</u> at 5 (citing <u>id.</u> Ex. A, ¶ 7, at 3 (Affidavit of Angelita Felix)); <u>but</u> <u>see</u> <u>id.</u> Ex. A, ¶ 7, at 3 (averment that copies of <u>Eligibility Document</u> had been "disseminated to all Education Line Officers, BIA School Principals, BIA School Board Presidents, and Special Education Coordinators," without specifying that schools were "BIA funded"). Furthermore, the <u>Eligibility Document</u> uses the terms "school" and "BIA funded school" interchangeably, without explicitly differentiating between BIA operated schools and tribally controlled schools. <u>See</u>, <u>e.g.</u>, <u>id.</u> Ex. A,

_____

[5] The term "BIA funded school" includes both BIA operated schools and tribally controlled schools. BIA Programs, 25 C.F.R. § 2026(3) (2000 Supp. Pamp.).

Attach. 3, at 115 (Sec. 8. Complaint Procedures. "A signed, written complaint may be filed with the BIA by any individual or organization who believes that the BIA funded school or [Education Line Officer] has violated a requirement of Part B of the IDEA." ); id. at 116 ("Upon receipt of a written complaint, within 60 days, the BIA will . . . [s]et aside all or part of any written complaint that is being addressed in a due process hearing, civil law suit, or Tribal Court until the conclusion of the hearing.  However, the BIA will resolve a complaint alleging that the school failed to implement a due process hearing decision."); id. at 121 ("The 45-calendar-day time frame begins when the written request is actually received by the BIA funded school or the BIA-OIEP, whichever is earlier.").  In contrast to the apparent broad scope of the Eligibility Document, the BIA-OIEP Director states in his September 12, 2000, cover memorandum to the Eligibility Document, that an area not addressed in the procedures is the "steps that the BIA may take, pursuant to the Tribally Controlled Schools Grant Act, in the event IDEA deficiencies are found at a grant school."  Id. Ex. A, Attach. 2 (Mehojah memorandum).  The issue was to be addressed and the decision "incorporated into the BIA-OIEP's policies and procedures after review from the Department of Education and at a later date."  Id.

## C.  The Named Plaintiffs

### 1.  Ashley Bitsilly

Plaintiff Ashley Bitsilly is a twelve-year-old Native American student.[6]  She allegedly is eligible for special education and related services under the IDEA.  Since the beginning of the 1997-1998 school year, Ashley has attended the Ch'ooshgai Community School.  Until February 1998, the Ch'ooshgai Community School was operated by the BIA.  In February 1998, the

---

[6] All ages of the Plaintiffs are as alleged in the complaint.

Ch'ooshgai Community School became a tribally controlled school funded by Defendants.

Plaintiffs allege that the BIA's Fort Defiance Agency has oversight authority of the Ch'ooshgai

Community School.

Since March of the 1997-1998 school year, Ashley has had an IEP in place.  However,

Plaintiffs allege that the Ch'ooshgai Community School has failed to provide Ashley a free

appropriate public education (or FAPE) in the least restrictive environment because it has failed to

properly and timely implement and follow Ashley's IEP, has failed to provide her with therapy

services or an appropriate behavior plan, has failed to have adequately trained teachers and other

school personnel, and has failed to modify the existing general curriculum to meet Ashley's needs.

Furthermore, as a result of inadequately trained teachers and staff, Plaintiffs allege Ashley has

been excluded from school functions because she has a disability.

Plaintiffs further allege that Ashley and her mother's due process rights were violated

because of Defendants' failure to ensure that the procedural safeguards required by the IDEA

were provided by the Ch'ooshgai Community School.  In May 1998, the Education

Superintendent for the Fort Defiance Agency of the BIA was notified in writing of the problems

surrounding Ashley's education under the IDEA at the Ch'ooshgai Community School.  On June

15, 1998, Ashley's mother, Tracey Denet-Yazzie, requested a due process hearing on behalf of

Ashley.  The hearing request was mailed to the Principal of the Ch'ooshgai Community School,

the Education Superintendent for the Fort Defiance Agency of the BIA, and the Field Solicitor of

the DOI in Albuquerque, New Mexico.  The Ch'ooshgai Community School responded to the

May and June letters on June 18, 1998.  It admitted its provision of education to Ashley was

inadequate and acknowledged the due process hearing request, but stated that the matter was

"first a local matter for [the] Principal, Executive Director, and Board of Education."  Pls.'
Compl. at 10, ¶ 33 (internal quotations omitted).  The Ch'ooshgai Community School did nothing
further to begin the hearing process.  On June 18, 1998, the Superintendent of the BIA's Fort
Defiance Agency faxed a letter to Ms. Denet-Yazzie's counsel, informing that the Agency did not
supervise the Ch'ooshgai Community School because it was a "grant school" and that he had
been assured by the Ch'ooshgai Community School that Ashley's IEP was being properly
implemented and so he assumed Ms. Denet-Yazzie's concerns had been addressed.  By return
facsimile on June 18, 1998, Ms. Denet-Yazzie's counsel informed the Fort Defiance Agency
Superintendent that the Ch'ooshgai Community School's letter did not fully address Ms. Denet-
Yazzie's concerns in requesting a due process hearing and that the hearing process should be
begun.  Nothing further was done to begin the hearing process and a hearing was never scheduled
or held.

    In their response to Defendants' first motion to dismiss and through attached exhibits,
Plaintiffs add, that despite the lack of written procedures regarding the IDEA's procedural
safeguards, Ms. Denet-Yazzie, on behalf of Ashley and through counsel, mailed a written
complaint to the BIA in Washington, D.C. in January 2000.  Plaintiffs further provide that
Defendants responded in a March 2000 letter that they would delay responding to the January
complaint until after the conclusion of the pending federal litigation, making no mention of any
lack of authority to respond to the complaint or rectify the alleged violations.

2.  Schecasulyn Tsosie

    Plaintiff Schecasulyn Tsosie is a twenty-year-old Native American student. She allegedly is
eligible for special education and related services under the IDEA.  She has attended schools

funded by Defendants under the IDEA since the fourth grade, including the Many Farms High

School.  Many Farms High School is operated by the BIA.

Plaintiffs allege that the Many Farms High School failed to provide Schecasulyn a FAPE in

the least restrictive environment because it denied her an appropriate educational plan; failed to

evaluate her for transitional services; failed to provide her with necessary counseling and other

related services; failed to place her in the least restrictive environment; failed to provide her with

qualified, trained staff that could provide her an appropriate education; and, during the 1996-1997

school year, failed to provide her with necessary occupational and speech therapy services

because it did not have the requisite therapists.  Plaintiffs further allege that Schecasulyn was

graduated from Many Farms High School in May 1998 over the objections of her mother and,

although she was eligible under the IDEA to receive educational services until the age of twenty-

two, she was denied access to services. Plaintiffs also allege that because of Defendants' failure to

provide or effectively implement the procedural safeguards required by the IDEA, Schecasulyn's

mother, Ms. Linda Etsitty, was unable to determine how to contest the actions of Many Farms

High School, and thus was deprived of an opportunity for an IDEA due process hearing.  There is

evidence, however, that Ms. Etsitty had notice of the procedural safeguards and was provided

with a copy of her parental rights in September of 1997 and when Schecasulyn was in tenth grade,

year unknown.  See Defs.' Consolidated Reply, Ex. D.

3.  Larry Barnell

Plaintiff Larry Barnell is a fourteen-year-old Native American student.  He allegedly is

eligible for special education and related services under the IDEA.  Larry attends or attended

schools funded by Defendants under the IDEA, including the Dilcon Boarding School and Hopi

Junior/Senior High School. The Dilcon Boarding School was a BIA operated school until August 1999, when it became a tribally controlled school funded by Defendants.  The Hopi Junior/Senior High School is a tribally controlled school funded by Defendants and, Defendants assert, operated by the Hopi Tribe.

Larry attempted to enroll at the Dilcon Boarding School in August 1997, and attended the school from September 1997 to May 1999, when he graduated.  Plaintiffs allege that the Dilcon Boarding School failed to provide Larry with a FAPE in the least restrictive environment because it delayed in enrolling him and in evaluating him, failed to develop a plan to address his behavior, and failed to hire, train, and provide qualified staff.  In their response to Defendants' first motion to dismiss, Plaintiffs add that the Dilcon Boarding School continually failed to evaluate Larry in a reasonable time, failed to properly conduct IEP meetings, and failed to develop an IEP within a reasonable time.  Plaintiffs also allege, in their complaint, that Larry was excluded from the Dilcon Boarding School on April 28, 1999, because of his behavior until an unspecified type of hearing could be completed.  Larry's mother, Ms. Loretta Yazzie, was informed it was her responsibility to arrange the hearing.  Larry returned to school without any hearing being held.

In the fall of 1999, Larry enrolled at the Hopi Junior/Senior High School.  Plaintiffs allege that the Hopi Junior/Senior High School failed to provide Larry with a FAPE in the least restrictive environment because it failed to provide him with any special education services or a behavior modification plan and failed to hire and train qualified staff.  In their response to Defendants' first motion to dismiss, Plaintiffs add that the Hopi Junior/Senior High School failed to develop an appropriate IEP for Larry within a reasonable time.  Plaintiffs further allege in their complaint that the due process rights of Larry and his mother were violated both by the Hopi

Junior/Senior High School's threat on October 28, 1999, to expel Larry if he did not withdraw from the school, without informing him or his family of any due process rights regarding the school's decision and by Defendants' failure to provide or effectively implement the procedural safeguards required by the IDEA. Plaintiffs contend that Defendants' failure caused Larry's mother, Ms. Yazzie, to be unable to determine how to contest the actions of the Dilcon Boarding School or the Hopi Junior/Senior High School.

4.  Gabriella Yazzie

Plaintiff Gabriella Yazzie is an eleven-year-old Native American student. She allegedly is eligible for special education and related services under the IDEA. In December 1997, Gabriella attempted to enroll at the Low Mountain Boarding School, a BIA operated school which is allegedly under the authority of the Chinle Agency of the BIA. Gabriella has attended the Low Mountain Boarding School since March 1998.

Plaintiffs allege that the Low Mountain Boarding School failed to provide Gabriella with a FAPE in the least restrictive environment because it delayed in enrolling her, attempted to force her to attend a larger school in another community, failed to develop an appropriate and/or timely IEP for her, failed to implement portions of the IEP, failed to provide adequate and/or timely therapy services, and failed to hire, train, or provide qualified staff. As a result of the Low Mountain Boarding School's actions, Plaintiffs allege that physical injury resulted to Gabriella in September 1999.

Plaintiffs also allege that Gabriella and her mother, Ms. Aida Yazzie, were deprived of their due process rights because of Defendants' failure to provide or effectively implement the procedural safeguards required by the IDEA. In their response to Defendants' first motion to

dismiss and through an attached affidavit, Plaintiffs add that Ms. Yazzie felt it would be futile to request a due process hearing or file a compliant because at a training sponsored by Defendants, an employee of Defendants stated that although parents had a right to request a hearing, the parents would lose and thus to request such a hearing was foolish.

## 5.  Lyle Ben

Plaintiff Lyle Ben is an eleven-year-old Native American student.  He allegedly is eligible for special education and related services under the IDEA.  Since the 1994-1995 school year, Lyle has attended schools funded by Defendants under the IDEA.  Lyle attended the Low Mountain Boarding School from the 1994-1995 school year through the 1998-1999 school year.  The Low Mountain Boarding School is a BIA operated school and allegedly under the authority of the Chinle Agency of the BIA.

Plaintiffs allege that the Low Mountain Boarding School failed to provide Lyle with a FAPE in the least restrictive environment during the 1995-1996 school year because it failed to evaluate him for and/or provide him necessary related services, such as therapy services; failed to provide a psycho-educational evaluation; failed to provide extended school year services; and failed to provide qualified teachers and personnel.  Plaintiffs also allege that Low Mountain Boarding School failed to ensure that Lyle had an appropriate IEP in place for the 1996-1997 school year; failed to fully and properly review his IEP and develop a new one during the 1997-1998 school year; and, during the 1998-1999 school year, failed to determine his continued eligibility for speech therapy, failed to provide extended school year services, and failed to provide progress reports to his parents, Herman and Louise Ben.  Plaintiffs further allege that the Low Mountain Boarding School has failed to provide the compensatory educational and related

services agreed upon in a 1997 settlement agreement, discussed below.

In their response to Defendants' first motion to dismiss, Plaintiffs contend that during the 1999-2000 school year Lyle attended the Cottonwood Day School, a BIA operated school.  They further contend, with support of attached exhibits, that the Cottonwood Day School did not provide Lyle with a special education teacher, that his last IEP was completed March 8, 1999, and that currently he does not have a complete IEP.

By a certified letter sent July 29, 1996, to the Superintendent for the Chinle Agency of the BIA, the Bens requested a due process hearing to address their complaints regarding Lyle's education at the Low Mountain Boarding School.  Plaintiffs allege Defendants made no effort to initiate the hearing process. On September 10, 1996, almost two months after the hearing request, a meeting was held to discuss the issues to be addressed at the hearing.  During the meeting, the BIA agreed to provide Lyle with several independent evaluations and with other services.  In the fall of 1997, the Bens, with the assistance of counsel, entered into an agreement with the BIA that provided for compensatory education (and related) services for Lyle to compensate for the lack of services during the 1995-1996 school year.  In the agreement, the Bens withdrew their request for a due process hearing but reserved Lyle's right through his parents to pursue claims for the violation of his constitutional right to due process.  Plaintiffs allege that Defendants' failure to provide or implement procedural safeguards deprived the Bens of an opportunity for a due process hearing as required by the IDEA.

## II.    PRELIMINARY ISSUES

### A.  Substitution of Defendants

Defendants Bruce Babbitt and Kevin Gover are sued by Plaintiffs in their official capacities

18

as, respectively, Secretary of the United States Department of the Interior and Assistant Secretary of the BIA.  Bruce Babbitt and Kevin Gover no longer hold these offices.  Therefore, pursuant to Fed. R. Civ. P. 25(d)(1), the caption in this case has been amended by the Court to incorporate the automatic substitution of Gale Norton as Secretary of Interior and James H. McDivitt as Acting Assistant Secretary of the BIA.

## B.  Construction of Motions

Because of the poor motion practice of Defendants, Plaintiffs and the Court failed to immediately realize that Defendants filed two separate motions to dismiss – the first labeled a motion to dismiss and the second labeled a suggestion of lack of subject matter jurisdiction. The one-paragraph suggestion was filed October 12, 2000, without a brief, and was intended by Defendants to be supported retroactively by their "consolidated" reply to their motion to dismiss filed earlier, on September 25, 2000.[7]  Not comprehending Defendants' intentions, on October 12, 2000, the Court granted Plaintiffs' motion to file a surreply to Defendants' reply to the first motion to dismiss.  Plaintiffs filed their surreply on October 26, 2000.  In response to Plaintiffs' surreply, Defendants filed a "Reply in Support of their Suggestion of Lack of Subject Matter Jurisdiction and Response to Plaintiffs' Surreply in Opposition to Defendants' Motion to Dismiss" (Defendants' reply/response or Defendants' reply).  Perceiving Defendants' reply/response as a response to their surreply, Plaintiffs filed a motion to strike it.  In response to Plaintiffs' motion to strike, Defendants filed a conditional motion for leave to file a response to Plaintiffs' surreply.

---

[7] Defendants contend the retroactive application was inadvertent, resulting from their failure to file the suggestion on September 25, 2000, with their "consolidated" reply, as planned.  Defs.' Resp. to Pls.' Mot. for Leave to File Surreply and Notice of Withdrawal of Exs., at 1.  Defendants' inadvertence appears also to have resulted in Defendants' failure to "attach" a copy of their "consolidated" reply to their suggestion, notwithstanding their referral to the Court to such an "attached brief."  Defs.' Suggestion.

Untangling the mess Defendants have caused, it is evident that: (1) Defendants' suggestion is a second motion to dismiss, supported by their "consolidated" reply brief to their first motion to dismiss; (2) Defendants' "consolidated" reply in support of their first motion to dismiss is both a reply in support of Defendants' first motion to dismiss and the supporting memorandum for Defendants' suggestion/second motion to dismiss; (3) Plaintiffs' Court-allowed surreply is actually a response to Defendants' suggestion/second motion to dismiss; and (4) Defendants' reply/response, thus, is not a response to Plaintiffs' surreply, but a reply to Defendants' suggestion/second motion to dismiss.  It does not appear that Plaintiffs were prejudiced by Defendants' actions.  Therefore, the motions and briefs at issue will be construed as enumerated above and Plaintiffs' motion to strike and Defendants' conditional motion for leave to file a response to Plaintiffs' surreply both will be denied as moot.  Defendants are cautioned, however, that a future occurrence of such maladroit motion practice may result in the striking of their motion.

## III.   STANDARD OF REVIEW

In their response to Defendants' first motion to dismiss, Plaintiffs summarily contend that, as to Defendants' lack of standing defense, the Court must construe the complaint in their favor and, as to Defendants' defense of failure to state a claim, a Rule 12(b)(6) standard of review applies.[8]  Defendants did not brief the issue of the appropriate standard of review in either of their

---

[8] The issue of the appropriate standard of review as to Defendants' first motion to dismiss was raised in an earlier motion to stay by Plaintiffs, with Plaintiffs contending that a summary judgment standard applied to both Defendants' Rule 12(b)(6) and 12(b)(1) arguments and Defendants contending that a motion to dismiss standard applied.  See Pls.' Mem. in Supp. of Mot. to Stay, filed June 14, 2000, at 2-5; Defs.' Opp'n to Pls.' Mot. to Stay, filed June 14, 2000, at 9-15; Pls.' Reply, filed June 14, 2000, at 1, 5-13, 16-19.  In deciding Plaintiffs' motion to stay, the magistrate judge stated that, for purposes of that motion only, he would assume that Defendants' (first) motion to dismiss was a motion for summary judgment.  See

motions to dismiss.  Because the Court relied upon evidentiary material submitted by the parties and because jurisdictional issues are intertwined with the merits, I will treat both Defendants' motions as ones for summary judgment under Rule 56.  United States v. Spectrum Emergency Care, Inc., 190 F.3d 1156, 1159-60 (10th Cir. 1999); see Fed. R. Civ. P. 12(b) (regarding Rule 12(b)(6) motions); Pringle v. United States, 208 F.3d 1220, 1222-23 (10th Cir. 2000) (regarding Rule 12(b)(1) motions) (citing Holt v. United States, 46 F.3d 1000, 1002 (10th Cir. 1995) and Wheeler v. Hurdman, 825 F.2d 257, 259 (10th Cir. 1987)).

Pursuant to a summary judgment standard of review, the truthfulness of the factual allegations will not be presumed and I will consider extrinsic evidence in reaching my conclusions. The motions will be granted only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  The facts will be construed in the light most favorable to the nonmovant, Magnum Foods, Inc. v. Continental Casualty Co., 36 F.3d 1491, 1497 (10th Cir. 1994), and all doubts will be resolved in favor of the existence of triable issues, World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

## IV.   DISCUSSION

## A.  The APA

In Count III of their complaint, Plaintiffs allege that Defendants violated the rule- making provision of the APA, 5 U.S.C. § 553, by issuing their September 1997 Interim Guidelines without notice and comment.  Plaintiffs also allege in Count III that Defendants have violated the APA because they do not have in place the procedural safeguards required by the IDEA.  The

---

Order, filed July 25, 2000, at 2.

relief sought by Plaintiffs includes a declaratory judgment that Defendants' alleged actions and omissions violated Plaintiffs' rights under the APA and a permanent injunction compelling Defendants to draft and implement IDEA regulations in accordance with the APA.

It is unclear whether the Defendants were required to comply with the APA's notice and comment requirement when the BIA issued the Interim Guidelines. There are strong arguments both ways. I need not reach the issue, however, because Plaintiffs' claim is moot. The Interim Guidelines are no longer in effect and permanent procedures have been promulgated, with notice and comment. See McAlpine v. Thompson, 187 F.3d 1213, 1216 (10th Cir. 1999). Furthermore, Plaintiffs lack standing as they have shown no injury to them as a result of the lack of notice and comment before the issuance of Defendants' Interim Guidelines. See Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 485-86 (1982). Therefore, summary judgment will be granted as to Plaintiffs' APA claims.

**B. The BIA Operated School Plaintiffs**

The BIA School Plaintiffs (Plaintiffs Schecasulyn Tsosie, Gabriella Yazzie, Lyle Ben, and Ashley Bitsilly and Larry Barnell, to the extent they attend or attended a BIA operated school) assert that by failing to develop, implement, and/or provide the procedural safeguards required by the IDEA, Defendants violated their procedural and substantive rights under the IDEA and their due process rights under the Due Process Clause of the Fifth Amendment. The BIA School Plaintiffs also contend that Defendants violated their substantive rights under the IDEA in failing to provide them with a FAPE in the least restrictive environment. The relief sought by all Plaintiffs includes a declaratory judgment that they and the class members they seek to represent are individuals with disabilities within the meaning of the IDEA and have a right to be free from

discrimination and to receive a FAPE; a declaratory judgment that, by Defendants' alleged actions and omissions, Defendants violated their rights under the IDEA, the Rehabilitation Act of 1973, and the Due Process Clause; a permanent injunction enjoining Defendants, and others, from engaging in the complained about actions and omissions regarding their duties under the IDEA, the Rehabilitation Act of 1973, and the Due Process Clause; a permanent injunction compelling Defendants, and others, to ensure the effective and expeditious implementation of their duties under the IDEA, the Rehabilitation Act of 1973, and the Due Process Clause, and to guarantee the protection of Plaintiffs' rights under those laws; an order retaining jurisdiction over Defendants and appointing a special master to monitor Defendants' activities until Defendants completely fulfill their duties to ensure that all children with disabilities are receiving a FAPE in the least restrictive environment.  Plaintiffs also seek compensatory relief, although it is unclear whether the compensation sought is educational or monetary.  Defendants contend that the BIA School Plaintiffs' procedural claims must be denied for failure to state a claim or lack of standing and their substantive claims must be denied for failure to exhaust administrative remedies.

1.  Procedural Claims

During all relevant times, the IDEA and federal regulations outlined procedural safeguard provisions which were directly applicable to BIA operated schools.  While it is contended that Defendants' actions caused the BIA School Plaintiffs to be unable to determine their procedural rights and to be deprived of an opportunity for a due process hearing, there is no allegation in the complaint that these Plaintiffs (including their parents) failed to receive the required notice of their procedural rights.  Moreover, there is evidence that some of these Plaintiffs either had notice of the procedural safeguards (Schecasulyn) or requested a due process hearing (Lyle).  There also is

no allegation as to these Plaintiffs, with the exception of Lyle, that they requested a due process

hearing and were ignored.  While Lyle's parents requested a due process hearing, they withdrew

the request and reached a settlement agreement with Defendants.[9]  Consequently, there is

insufficient evidence that Defendants failed to provide notice of or implement the required

procedural safeguards under the IDEA.  Summary judgment will be granted as to the BIA School

Plaintiffs' due process or procedural claims.

2.  Substantive Claims

Before the BIA School Plaintiffs may seek judicial review of their substantive IDEA

claims (including their claims of nonexistent or inadequate IEPs) and their Rehabilitation Act

claims, they must exhaust their administrative remedies under the IDEA.  "The purpose of the

exhaustion rule is to permit agencies to exercise discretion and apply their expertise, to allow the

complete development of the record before judicial review, to prevent parties from circumventing

the procedures established by Congress, and to avoid unnecessary judicial decisions by giving the

agency an opportunity to correct errors."  Urban v. Jefferson County Sch. Dist. R-1, 89 F.3d 720,

724 (10th Cir. 1996).  For exhaustion to occur, the administrative process need not be completed

if Defendants fail to respond to a hearing request in the prescribed time period.   Exhaustion is

excused when administrative remedies would be futile, provide inadequate relief, or "where an

agency has adopted a policy or pursued a practice of general applicability that is contrary to law."

Association for Cmty. Living in Colorado v. Romer, 992 F.2d 1040, 1044 (10th Cir. 1993)

(internal quotations omitted);  H.R. Rep. No. 99-296, at 7 (1985) (quoted in Christopher W. v.

_____

[9] The settlement agreement's preservation of Lyle's right to pursue claims for violations of his
constitutional right to due process does nothing to eviscerate Lyle's knowledge or ability to take advantage
of the IDEA's procedural safeguards.

Portsmouth Sch. Comm., 877 F.2d 1089, 1094 (1st Cir. 1989), and Robinson v. Kansas, 117

F.Supp.2d 1124, 1143 (D. Kan. 2000)) (Reasons to excuse exhaustion under the IDEA include

complaints that: "(1) it would be futile to use the due process procedures ...; (2) an agency has

adopted a policy or pursued a practice of general applicability that is contrary to the law; (3) it is

improbable that adequate relief can be obtained by pursuing administrative remedies (e.g., the

hearing officer lacks the authority to grant the relief sought). . . .").

The BIA School Plaintiffs, with the exception of Lyle, never requested a due process

hearing.[10]  They, therefore, have not exhausted their administrative remedies.

Lyle made a written complaint and requested a due process hearing regarding his

complaints about his education during the 1995-1996 school year.  It appears Defendants failed to

respond to the hearing request within the statutory time-frame.  Consequently, Lyle exhausted his

administrative remedies as to those claims.  However, these claims are moot because the hearing

request was withdrawn and the parties reached a settlement agreement.  Any claims arising after

the settlement agreement as to Lyle's education, including Defendants' violation of the settlement

agreement, first must be attempted to be resolved through the IDEA's administrative remedies

process.  See George v. New Mexico State Bd. of Educ., Civ. No. 99-1318 LH/RLP, slip op. at

---

[10] Larry Barnell was excluded from school on April 28, 1999, after a behavior-related incident.  By
letter dated April 28, 1999, the principal of the (BIA operated) school informed Larry's mother that Larry
would be on home-instruction until "a hearing is completed" and that she was "responsible for arranging
the hearing." Pls.' Resp. to Defs.' First Mot. to Dismiss, Ex. J (Jimenez letter); Pls.' Compl. at 13, ¶ 51.
While such an exclusion arguably could be considered under the IDEA as a change in an educational
placement requiring notice of due process or complaint procedures, see, e.g., 20 U.S.C. § 1415(b)(6), it
appears that some notice of those procedures was given, however inadequately or incorrectly stated.  There
is no allegation that Larry ever requested such a hearing be held or otherwise complained.  Therefore,
assuming their availability under the IDEA, administrative remedies were not exhausted.  Furthermore, the
school later allowed Larry "to return to school without any hearing taking place," Pls.' Compl. at 13, ¶ 51,
and Larry has alleged no injury resulting from the exclusion.

11 (D.N.M. filed Feb. 23, 2001) [Doc. No. 35].  Lyle has made no such attempt, and, thus, has

failed to exhaust his administrative remedies as to these claims.

 None of the three exceptions to the administrative exhaustion requirement apply to the

BIA School Plaintiffs.  "To fall into the third exception, [Defendants] must have adopted a policy

of general applicability contrary to law which 'thereby renders agency expertise and the factual

development of an administrative record less important.'"  Urban, 89 F.3d at 725 (quoting Ass'n

for Cmty. Living, 992 F.2d at 1044).  In the IDEA context, the Tenth Circuit has applied this rule

to mean that where the plaintiff's allegations raise factual questions, and not pure questions of

law, exhaustion should not be excused.  Urban, 89 F.3d at 725; Ass'n for Cmty. Living, 992 F.2d

at 1044-45.  Factual questions are raised by the BIA School Plaintiffs as to the adequacy of their

education, requiring "a factually intensive inquiry into the circumstances of each individual child's

case," and which are "best resolved with the benefit of agency expertise and a fully developed

administrative record."  Ass'n for Cmty. Living, 992 F.2d at 1044 (internal quotations omitted).

 As to the remaining two exceptions, "[a]dministrative remedies are generally inadequate

or futile where plaintiffs allege structural or systemic failure and seek statewide reforms" or

"assert violations of the IDEA's due process provisions."  Id.  While this case presents a close

question regarding what constitutes a systemic violation for purposes of excusal of the exhaustion

requirement, I cannot conclude that this is a case where the purposes of exhaustion would not "be

furthered by allowing [Defendants] to have the first opportunity to consider and correct the

alleged violations."  Id. at 1045.  Although the BIA School Plaintiffs, both for themselves and on

behalf of the putative class they represent, have alleged systemic failures (such as the provision of

inadequate staff) and due process violations, there is insufficient evidence that these alleged

systemic failures or procedural violations render the exhaustion requirement futile or inadequate. Id. at 1044; see id. at 1045 ("Even where exhaustion is necessary, the exhaustion of a few representative claims may be sufficient to secure statutory compliance and, if not, would at least serve the purposes of the exhaustion requirement and properly frame the issues for judicial review."); Urban, 89 F.3d at 725 ("To hold otherwise would be contrary to the explicit language of the statute and would undermine the purposes of the exhaustion requirement." ); cf. Davoll v. Webb, 194 F.3d 1116, 1133 (10th Cir. 1999) (The subjective belief that an administrative due process procedure is futile, generally, is not reason by itself to not attempt to initiate that process.).   Therefore, the BIA School Plaintiffs were required to exhaust their administrative remedies under the IDEA.  Summary judgment will be granted as to the BIA School Plaintiffs' substantive claims.

**C.  The Tribally Controlled School Plaintiffs**

Tribally controlled schools are schools which are not local educational agencies and which are not directly administered by the BIA.  25 U.S.C. § 2511(5) (2000 Supp. Pamp.).  Such schools may be BIA funded schools if they receive federal assistance under the Tribally Controlled Schools Act.  Id. § 2026(3).  Ashley Bitsilly and Larry Barnell allegedly both attend or attended a tribally controlled school (funded by Defendants) for part of the relevant time period.  Both make procedural and substantive claims regarding their education at tribally controlled schools.  These claims are the same or similar to the claims made by the BIA School Plaintiffs.  Ashley and Larry also seek the same relief as the BIA School Plaintiffs.  Defendants assert that while Plaintiffs Ashley Bitsilly and Larry Barnell have standing for allegations concerning their claims arising during their attendance at BIA operated schools, the Court lacks subject matter jurisdiction over

their claims arising during their attendance at a tribally controlled school.  Defendants contend

that Ashley and Larry lack standing as to these claims because, under the Tribally Controlled

Schools Act, they must sue tribal authorities and, thus, have sued the wrong parties. "The basis of

this defense is that the BIA is not empowered under the Tribally Controlled Schools Act to

provide the substantive injunctive relief sought in the complaint."  Defs.' Consolidated Reply at 2.

Defendants further contend that, as to his substantive IDEA claims, Larry has failed to exhaust his

administrative remedies.

1.  Standing

> To demonstrate standing, a party must show:
>
> (1) injury in fact, by which we mean an invasion of a legally protected interest that
> is (a) concrete and particularized, and (b) actual or imminent, not conjectural or
> hypothetical; (2) a causal relationship between the injury and the challenged
> conduct, by which we mean that the injury fairly can be traced to the challenged
> action of the defendant, and has not resulted from the independent action of some
> third party not before the court; and (3) a likelihood that the injury will be
> redressed by a favorable decision, by which we mean that the prospect of obtaining
> relief from the injury as a result of a favorable ruling is not too speculative.  These
> elements are the irreducible minimum required by the Constitution.

Northeastern Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.,

508 U.S. 656, 663-64 (1993) (internal quotations and citations omitted).

Congress enacted the Tribally Controlled Schools Act of 1988 (TCSA), 25 U.S.C.

§§ 2501-2511,[11] to recognize "the obligation of the United States to respond to the strong

expression of the Indian people for self-determination by assuring maximum Indian participation

in the direction of educational services so as to render such services more responsive to the needs

---

[11]  For simplicity's sake, citations in this opinion to the TCSA refer to the 2000 Supplementary
Pamphlet, unless otherwise noted.

and desires of those communities." 25 U.S.C. § 2502(a).  Congress also declared "its

commitment to the maintenance of the Federal Government's unique and continuing trust

relationship with and responsibility to the Indian people through the establishment of a meaningful

Indian self-determination policy for education which will deter further perpetuation of a Federal

bureaucratic domination of programs." Id. § 2502(b).

The TCSA recognizes that the BIA's "administration and domination of the contracting process"

under previous law has failed to provide tribes "the full opportunity to develop leadership skills

crucial to the realization of self-government," denying "the Indian people an effective voice," id.

§ 2501(2), and that "true local control requires the least possible federal interference," id. §

2501(6).  The goal of the TCSA is "to provide the resources, processes, and structures which will

enable tribes and local communities to effect the quantity and quality of educational services and

opportunities which will permit Indian children to compete and excel in the life area of their

choice, and to achieve the measure of self-determination essential to their social and economic

well-being." Id. § 2502(c).

    To implement Congress' goals, the Secretary of the Interior is authorized under the TCSA

to provide grants, through the BIA, to Indian tribes and tribal organizations. Id. § 2503.  Grants

may consist of funds provided under the IDEA. Id. § 2504.  In the allocation of funds under the

IDEA, tribally controlled schools are to be treated as BIA schools. Id. § 2504(b)(2) (emphasis

added).  However, "[f]unds allocated to a tribally controlled school [under the IDEA through a

TCSA grant] shall be subject to the [TCSA] and shall not be subject to any additional restriction,

priority, or limitation that is imposed by the [BIA] with respect to [IDEA] funds . . . ." Id. §

2504(3)(A).  Additionally, "Indian tribes and tribal organizations to which [TCSA] grants are

provided . . ., and tribally controlled schools for which such grants are provided, shall not be subject to any requirements, obligations, restrictions, or limitations imposed by the [BIA] that would otherwise apply solely by reason of receipt of [IDEA] funds." Id. § 2504(3)(B).  The TCSA, however, does not terminate, reduce, or suspend the federal government's responsibility "to provide a program." Id. § 2503(e).  Furthermore, the Secretary of the Interior, after procedural safeguards, may revoke a tribally controlled school's eligibility for TCSA grants, in whole or part; decline to provide a grant; assume or reassume control or operation of the program, activity, service, or function at issue; and/or reassume control of BIA operated school-turned-tribally controlled school, if, among other things, the tribally controlled school violates the IDEA.  Id. §§ 2505(f), 2506(c), 2508(a) (incorporating 25 U.S.C. § 450(m)).  Generally, the Interior Secretary must prescribe corrective action.  Id. §§ 2505(f), 2506(c), 2508(a) (incorporating 25 U.S.C. § 450(m)).

Defendants do not argue that the TCSA gives tribally controlled schools license to violate the IDEA.  Although Defendants agree that tribes must be held accountable under the TCSA, and that the BIA or DOI can inform tribal authorities that they must comply with the IDEA and monitor their efforts, they contend that, under the TCSA, their enforcement powers are extremely limited.  They contend that if a tribally controlled school fails to perform IDEA-related functions and duties, the BIA does not have the authority to directly intervene.  For example, the BIA cannot appoint due process hearing officers, hold due process hearings, or develop IEPs.  Furthermore, while Defendants agree every parent of a disabled child eligible for services under the IDEA has the right to request a due process hearing or make a written complaint, and if a response is not timely made, to "swiftly obtain a judicial order to correct the oversight,"  Defs.'

30

Consolidated Reply at 25, and enforce their procedural rights in court, Defs.' Reply at 3 & n.3,

they also argue that for children attending tribally controlled schools, such relief must be sought

from (and suit made against) tribal authorities, not from (or against) Defendants.[12]

The interrelationship between the IDEA and the TCSA is poorly delineated.  Congress

was explicit in its desire that the BIA not impose restrictions on tribally controlled schools solely

because they received IDEA funding or attach strings to IDEA funding, other than those required

by the TCSA.  However, Congress also was explicit in its desire that disabled children, including

Native American children living on reservations, receive the education and services they need to

succeed in life.  Congress did not exempt tribally controlled schools from the IDEA's application.

Congress' intent in enacting the TCSA cannot have been to throw Native American children to

the wolves in the name of tribal or Indian self-determination.  Moreover, to raise the shield of self-

determination, under the facts of this case, does little to promote such self-determination.

Congress did not intend tribal self-governance to occur in a vacuum.  Finally, the "unique trust

relationship between the United States" and Native Americans requires that ambiguous federal

statutes "be construed liberally in favor of Native Americans" – in this case, Native American

children.  Ramah Navajo Chapter v. Lujan, 112 F.3d 1455, 1461 (10th Cir. 1997) (internal

quotations omitted).

The TCSA's limitations on BIA interference with the implementation of the IDEA by

tribally controlled schools does not foreclose the provision of assistance or guidance by

Defendants to those schools or the mandated enforcement by the DOI of the IDEA's guarantees.

---

[12] Under the IDEA, a civil action may be brought only in state or federal district court. 20 U.S.C. §
1415 (i)(2)(A).  There is no right to bring such a claim in tribal court and thus tribal courts would have no
subject matter jurisdiction over IDEA actions brought under § 1415.

Not only do the TCSA and IDEA both mandate the involvement of the DOI, and by delegation the BIA, but the success of both statutes depends on the DOI's performance of its obligations under the IDEA and the TCSA.

While Ashley Bitsilly and Larry Barnell, and the putative class they represent, may have a cause of action against the tribal school authorities or tribes, assuming any requisite waiver of tribal sovereign immunity,[13] they also have standing to bring claims against Defendants.  Contrary to Defendants' argument, Ashley's and Larry's allegations regarding the "failures of a tribally controlled school to provide substantive special education, conduct timely due process hearings, establish a hearing mechanism, or provide notice of procedural safeguards" are "fairly traceable" to the "action or inaction of federal defendants," Defs.' First Mot. to Dismiss at 13. Notwithstanding the restrictions the TCSA places on the BIA and the principles of accountability that underlie self-governance, the allegations and evidentiary material support the claims that

---

[13] "As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." Kiowa Tribe of Okla. v. Manufacturing Techs., Inc., 523 U.S. 751, 754 (1998).  While state sovereign immunity is abrogated by the IDEA, 20 U.S.C. § 1403, there is no such abrogation of tribal sovereign immunity.  Moreover, the TCSA provides that it does not affect, modify, diminish, or "otherwise impair the sovereign immunity from suit enjoyed by an Indian tribe."  25 U.S.C. § 450n(1) (1983 and Supp. Pamp. 2000) (incorporated in 25 U.S.C. § 2508(a)).  For children attending tribally controlled schools, tribal sovereign immunity may render the procedural right under the IDEA to bring a judicial claim meaningless.  However, while tribes may enjoy sovereign immunity, individual tribal members do not share that immunity from suit in declaratory or injunctive actions.  See Santa Clara Pueblo v. Martinez, 436 U.S. 49, 59 (1978); Puyallup Tribe, Inc. v. Department of Game of State of Wash., 433 U.S. 165, 171-72 (1977); TTEA v. Yslet Del Sur Pueblo, 181 F.3d  676, 680-81 (1999).  Additionally, it has been concluded that tribally controlled school board members administering grant agreements pursuant to the TCSA are deemed employees of the BIA for purposes of the Federal Tort Claims Act (FTCA) and can be sued as such.  Big Owl v. United States, 961 F.Supp. 1304, 1307-08 (D.S.D. 1997) (citing Public Law 101-512, Title III, § 314, 104 Stat. 1915, 1959-60 (Nov. 5, 1990), as amended, Pub.L. 103-138, Title III, § 308, 107 Stat. 1416 (Nov. 11, 1993) (codified at 25 U.S.C. § 450(f) Historical and Statutory Notes); see Davenport v. Young Men's Christian Assoc., No. 99-1037, 205 F.3d 1345, 1999 WL 1059829 at *1 (8th Cir. Nov. 16, 1999) (unpublished disposition) (school operated by Indian tribe pursuant to BIA grant is deemed to be part of BIA for FTCA purposes).

Defendants failed to perform their supervisory responsibilities under the IDEA and TCSA and failed to pursue the options available to them under both statutes for remedying IDEA deficiencies, including coordinating Part B services; assisting tribally controlled schools to develop and implement the procedures and programs necessary for successful special education programs with full parental involvement as required by the IDEA and federal regulations; ensuring such procedures and programs are established when awarding IDEA grants and that each school has the necessary framework and tools to comply with the IDEA; monitoring and evaluating tribally controlled schools receiving IDEA funding to ensure they are in continued compliance with the IDEA; and, where appropriate, revoking eligibility for IDEA grants for noncompliance with IDEA, assuming or reassuming control or operation of IDEA programs or services, or reassuming control of schools.  Therefore, Ashley and Larry, as to their tribally controlled school claims, have sued a proper party.  Summary judgment will be denied as to all of Ashley's tribally controlled school claims and as to Larry's procedural tribally controlled school claims.

2.  Exhaustion of Administrative Remedies

It is uncontested that Ashley Bitsilly has exhausted her administrative remedies as to her substantive claims, such as those remedies may have existed.  Ashley, through her mother, made a written request for a due process hearing.  She has not received that hearing, and the prescribed deadline for receipt of a decision has long passed.  Consequently, even though there is no administrative record for the Court to review, she is deemed to have exhausted her administrative remedies, such as those remedies may have been developed and implemented by her school.  I note that even if Ashley had not attempted to exhaust her administrative remedies by requesting a due process hearing, I would have concluded that the failure to exhaust was excused for the

reasons discussed below.

Defendants contend that Larry Barnell has failed to exhaust his administrative remedies as to his substantive claims relating to his attendance at a tribally controlled school, and thus the Court lacks subject matter jurisdiction over those claims. Although the evidence shows that Larry has failed to exhaust his administrative remedies, his failure will be excused because there is no evidence of any policies developed and administered by Larry's (or Ashley's) tribally controlled school implementing the procedural safeguards required by the IDEA. Nonexistent administrative remedies are clearly inadequate remedies, representing a systemic failure. Ass'n for Cmty. Living, 992 F.2d at 1044 ("Administrative remedies are generally inadequate or futile where plaintiffs allege structural or systemic failure and seek statewide reform" or "assert violations of the IDEA's due process provisions.").

The evidence indicates that the DOI has failed in its duty to ensure that IDEA-compliant procedural safeguards for disabled Native American children attending tribally controlled schools were developed and implemented by these schools, with any required technical assistance from Defendants. It is unclear from the allegations and the evidence on record to whom a written complaint should be made or what procedures need to be followed to request a due process hearing or mediation. The BIA-OIEP Director eludes to this in his cover letter to Defendants' Eligibility Document. Defs' Consolidated Reply, Ex. A, Attach. 2. Additionally, Defendants are inconsistent in their conception of what IDEA procedures children attending tribally controlled schools must follow. While Defendants dispute from whom Larry (or Ashley) may seek relief, the BIA's March 17, 2000, letter in response to Ashley's written complaint makes no mention of any lack of authority to respond to her claims, Pls.' Resp. to Defs.' First Mot. to Dismiss, Ex. H at 2,

34

and Defendants' <u>Eligibility Document</u> appears to incorporate tribally controlled schools.  Larry cannot be expected to have followed or exhausted what appear not to have existed.  (Ashley's attempt to exhaust her administrative remedies is not evidence that those remedies actually were available and publicized.)  Because Larry has alleged both a systemic failure and due process violations, allegations which are supported by the evidence, Larry will not be required to exhaust his administrative remedies.  Summary judgment will be denied as to Larry's substantive tribally controlled school claims.

3.  Redress

Assuming no further motions, the next step in this action generally would be for the Court to address the procedural and substantive claims of Ashley and Larry, including a review of claims that ordinarily would have been addressed first in the administrative process.[14]  However, assuming substantive and/or procedural violations are found, it is unclear what redress the Court has the authority to order for these violations.   It also is unclear from the parties' pleadings and motions, the precise relief sought by Ashley and Larry and the putative class they represent.

Congress, in enacting the TCSA and the IDEA, failed to address implicit conflicts between the two statutes as to who is responsible for violations of the IDEA by a tribally controlled school and to whom disabled Native American children may turn for relief.  The Court cannot order Ashley and Larry's tribally controlled schools to comply with the IDEA, as they are not parties to

---

[14] Contrary to Defendant's argument, "whether the BIA has the legal authority to appoint a hearing officer for a tribally controlled school in response to [an] administrative complaint brought by a child's parent or guardian," Defs.' Reply at 7 & n.5, is a question irrelevant to Ashley's and Larry's claims.  The exhaustion requirement has been satisfied by or excused for Ashley and Larry. Exhaustion means that all the administrative procedures have been complied with, to the extent possible, and there no longer is a requirement that a due process hearing be held.

this action.  The Court also is limited, indirectly, by the TCSA in what remedies it can order the
BIA to provide.  It is conceivable that the Court could order Defendants to provide Ashley and
Larry a FAPE directly – outside of the confines of their tribally controlled schools.  It also is
possible that the Court could order the DOI to fulfill its supervisory, guidance, and enforcement
responsibilities under the IDEA and the TCSA, although the relief this would provide Ashley,
Larry, and the putative class they represent, likely would be indirect and less than expeditious.
Therefore, in view of the vacuum left by Congress, the controlling statutes, and the DOI, the
parties shall provide the Court with their views as to what remedies, if any, may be available
through this Court for the Tribally Controlled School Plaintiffs.

**THEREFORE, IT IS ORDERED** that, pursuant to Fed. R. Civ. P. 25(d)(1), James H.
McDivitt is substituted in the caption for Kevin Gover, as (Acting) Assistant Secretary of the
Bureau of Indian Affairs, and Gale Norton is substituted in the caption for Bruce Babbitt, as
Secretary of the United States Department of the Interior.

**IT IS FURTHER ORDERED** that: (1) Defendants' Suggestion of Lack of Subject
Matter Jurisdiction, filed October 12, 2000 [Doc. No. 52], is construed as a second motion to
dismiss by Defendants (Defendants' suggestion/second motion to dismiss); (2) Defendants'
"consolidated" reply in support of their first motion to dismiss, filed September 25, 2000 [Doc.
No. 47], is construed as both a reply in support of Defendants' first motion to dismiss and as the
supporting memorandum for Defendants' suggestion/second motion to dismiss; (3) Plaintiffs'
Surreply to Defendants' Reply in Support of Motion to Dismiss and Supplemental Suggestion of
Lack of Subject Matter Jurisdiction, filed October 26, 2000 [Doc. No. 55], is construed as a

response to Defendants' suggestion/second motion to dismiss; and (4) Defendants' Reply in

Support of Their Suggestion of Lack of Subject Matter Jurisdiction and Response to Plaintiffs'

Surreply in Opposition to Defendants' Motion to Dismiss, filed November 13, 2000 [Doc. No.

56], is construed as Defendants' reply to their suggestion/second motion to dismiss.

   **IT IS FURTHER ORDERED** that Defendants' two motions to dismiss [Doc. Nos. 43

and 52] are construed as motions for summary judgment.

   **IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike Defendants' Reply in

Support of Suggestion of Lack of Subject Matter Jurisdiction and Response to Plaintiffs' Surreply

in Opposition to Defendants' Motion to Dismiss, filed November 29, 2000 [Doc. No. 57], is

DENIED as moot.

   **IT IS FURTHER ORDERED** that Defendants' Conditional Motion and Brief for Leave

to File a Response to Plaintiffs' Surreply, filed December 14, 2000 [Doc. No. 59], is DENIED as

moot.

   **IT IS FURTHER ORDERED** that, as to Defendants' Motion to Dismiss, filed

September 25, 2000 [Doc. No. 43], and Defendants' Suggestion of Lack of Subject Matter

Jurisdiction, filed October 12, 2000 [Doc. No. 52], SUMMARY JUDGMENT is PARTIALLY

DENIED AND PARTIALLY GRANTED as follows:

   (1)    Summary judgment, in favor of Defendants, is GRANTED as to
          Plaintiffs' APA claims;

   (2)    Summary judgment, in favor of Defendants, is GRANTED as to the
          procedural and substantive claims of Plaintiffs Schecasulyn Tsosie,
          Gabriella Yazzie, and Lyle Ben;

   (3)    Summary judgment, in favor of Defendants, is GRANTED as to the
          procedural and substantive claims of Plaintiffs Ashley Bitsilly and
          Larry Barnell which arose during the time they attended a BIA

operated school; and

(4)     Summary judgment, in favor of Defendants, is DENIED as to the
procedural and substantive claims of Plaintiffs Ashley Bitsilly and
Larry Barnell which arose during the time they attended a tribally
controlled school.


**IT IS FURTHER ORDERED** that the parties shall SIMULTANEOUSLY BRIEF the

issue of the available scope of remedies for Plaintiffs whose claims arose during their attendance

at tribally controlled schools (the Tribally Controlled School Plaintiffs).  In their brief, Plaintiffs

also shall clarify and delineate the relief sought by the Tribally Controlled School Plaintiffs.  The

briefs shall be filed no later than thirty days from the filing of this Opinion.


_____

**UNITED STATES DISTRICT JUDGE**


Counsel for Plaintiffs: Therese E. Yanan, DNA-PEOPLE'S LEGAL SERVICES, INC., Shiprock, New
Mexico; Sarah J. Somers, DNA-PEOPLE'S LEGAL SERVICES, INC., Tuba City, Arizona; Anna-Marie
Johnson, DNA-PEOPLE'S LEGAL SERVICES, INC., Window Rock, Arizona, and Debra D. Poulin,
Santa Fe, New Mexico

Counsel for Defendants: Raymond Hamilton, U.S. ATTORNEY'S OFFICE, Albuquerque, New
Mexico; Thomas W. Millet and Peter Robbins, U.S. DEPARTMENT OF JUSTICE, Washington
D.C.